Nos. 23-12308 & 23-12313

_____

## IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

_____

FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH UNITES OF THE NAACP, *et al.*
*Plaintiffs-Appellees,*

v.

CORD BYRD, *et al.,*
*Defendants-Appellants.*

_____

HISPANIC FEDERATION, *et al.*
*Plaintiff-Appellee,*

v.

CORD BYRD, in his official capacity as
FLORIDA SECRETARY OF STATE, *et al.,*
*Defendants-Appellants.*

_____

On Appeal from the United States District Court
for the Northern District of Florida
No. 4:23-cv-215 (Walker, C.J.)

_____

## MOTION TO INTERVENE ON APPEAL BY LEAGUE OF WOMEN VOTERS OF FLORIDA

_____

Chad W. Dunn
Florida Bar No. 0119137
BRAZIL & DUNN
1200 Brickell Avenue
Suite 1950
Miami, FL 33131

Danielle M. Lang (D.C. Bar No. 1500218)
Brent Ferguson* (D.C. Bar No. 1782289)
Jonathan Diaz (D.C. Bar No. 1613558)
Ellen Boettcher* (D.C. Bar No. 90005525)
Simone Leeper* (D.C. Bar No. 1737977)
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Ste. 400

i

Telephone: (305) 783-2190 Facsimile: (305) 783-2268 chad@brazilanddunn.com

Washington, DC 20005
(202) 736-2200
bferguson@campaignlegal.org
dlang@campaignlegal.org
jdiaz@campaignlegal.org
eboettcher@campaignlegal.org
sleeper@campaignlegal.org

***Application for Admission to the 11th Circuit Forthcoming*

*Counsel for Proposed Intervenors*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................ii

INTRODUCTION ......................................................................... 1

PROCEDURAL HISTORY ............................................................. 2

ARGUMENT ............................................................................... 5

   I.  Intervention on appeal is appropriate in this case, especially due to its uncommon procedural posture................................................5

  II.  Plaintiffs have met the requirements of FRCP 24 ........................ 8

      A. The League has a right to intervene ................................. 8

         1. The League's motion is timely ................................... 9

         2. The League meets the remaining requirements for intervention as of right in FRCP 24(a)(2) .............. 13

      B. Permissive intervention is also appropriate ................... 16

CONCLUSION............................................................................17

CERTIFICATE OF COMPLIANCE ...................................................... 19

CERTIFICATE OF SERVICE ............................................................. 20

## TABLE OF AUTHORITIES

**Cases**                                                        **Page**

*Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117
      (11th Cir. 2005) ..................................................................6

*Arizona v. Mayorkas*, 143 S. Ct. 1312 (2023) ....................................6

*Cameron v. EMW Women's Surgical Center*, 142 S. Ct. 1002
      (2022) ..........................................................................5, 9, 10, 11

*Chiles v. Thornburgh*, 865 F.2d 1197 (11th Cir. 1989) .............12, 14

*Commissioner, Alabama Department of Corrections v. Advance
      Local Media, LLC*, 918 F.3d 1161 (11th Cir. 2019) .........9, 10, 12

*Craig v. Simon*, 980 F.3d 614 (8th Cir. 2020) ..................................10

*Dillard v. Chilton County Commission*, 495 F.3d 1324
      (11th Cir. 2007) ................................................................17

*Elliott Industries Limited Partnership v. BP American Production
      Company*, 407 F.3d 1091 (10th Cir. 2005) ..................................8

*Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242
      (11th Cir. 2002) ................................................................12

*Gonzalez v. Reno*, No. 00-11424-D, 2000 WL 502118
      (11th Cir. Apr. 27, 2000) ....................................................6

*Hall v. Holder*, 117 F.3d 1222 (11th Cir. 1997)................................7

*Huff v. Commissioner of IRS*, 743 F.3d 790 (11th Cir. 2014) .........13

*International Union, United Automobile, Aerospace & Agricultural
      Implement Workers of America AFL-CIO, Local 283 v. Scofield*,
      382 U.S. 205 (1965)....................................................................8

*League of Women Voters of Florida v. Browning*,
      863 F. Supp. 2d 1155 (N.D. Fla. 2012) ......................................16

*League of Women Voters of Florida v. Cobb*,
      447 F. Supp. 2d 1314 (S.D. Fla. 2006)......................................16

*League of Women Voters of Florida v. Detzner*, 172 So. 3d 363
      (Fla. 2015)......................................................................16

*League of Women Voters of Florida Inc. v. Florida Secretary of State*, 66 F.4th 905 (11th Cir. 2023)...........................................16

*Massachusetts School of Law at Andover, Inc. v. United States*, 118 F.3d 776 (D.C. Cir. 1997) ........................................8

*Purcell v. BankAtlantic Financial Corporation*, 85 F.3d 1508 (11th Cir. 1996) ........................................................16

*Richardson v. Flores*, 979 F.3d 1102 (5th Cir. 2020) .......................8

*Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278 (11th Cir. 2017)..............................................10, 13

*Stone v. First Union Corporation,* 371 F.3d 1305 (11th Cir. 2004) ....................................................13, 14

*United States v. City of Detroit*, 712 F.3d 925 (6th Cir. 2013)..........6

*United States v. Laraneta*, 700 F.3d 983 (7th Cir. 2012).................6

*Walker v. Jim Dandy Company*, 747 F.2d 1360 (11th Cir. 1984)...17

*Warren v. Commissioner of Internal Revenue,* 302 F.3d 1012 (9th Cir. 2002) ..............................................................8

**Ongoing Cases**

*Florida State Conference of Branches & Youth Units of the NAACP v. Byrd*, Case No. 4:23-cv-215 (N.D. Fla. 2023) .......2, 3, 5, 12, 13

*Hispanic Federation v. Byrd*, Case No. 23-cv-218 (N.D. Fla. 2023)..............................................................2, 3, 5

*League of Women Voters of Florida v. Moody*, Case No. 4:23-cv-216 (N.D. Fla. 2023) ...........................2, 3, 4, 15

**Statutes, Rules, and Other Authorities**

Fed. R. Civ. P. 24(a)(2).....................................................8, 9

Fed. R. Civ. P. 24(b)(1)(B)...................................................16

# INTRODUCTION

Intervention on appeal is proper in this case because the League of Women Voters of Florida (the League) has an indisputably strong interest in the outcome of this appeal, and is prevented from participating as a party only because of the case's atypical procedural posture.

In May, the League and two other plaintiff groups challenged SB 7050, a law restricting voter registration activities. All three groups moved for a preliminary injunction on various provisions of the law, and the court consolidated the cases. First, the district court granted the motions filed by two of the plaintiff groups, enjoining two of SB 7050's provisions. Later, the court denied the League's motion as to those same two provisions, holding that the motion was moot because the provisions had already been enjoined in the two companion cases.

Because the League's motion was denied as moot, it is not a party to this appeal. But intervention is appropriate here because upholding the injunction is critical to the League. And the League has met the requirements for intervention: this motion is timely and will lead to no prejudice, because the League will simply participate in briefing and

1

argument on the same schedule as existing appellees. Further, deciding the appeal without the League's participation would impair its interests, and no party to the appeal will adequately represent those interests.[1]

## PROCEDURAL HISTORY

On May 24, 2023, Governor Ron DeSantis signed into law SB 7050, a bill that imposed severe new restrictions on third-party voter registration organizations (3PVROs). That same day, the League filed a complaint challenging six provisions in SB 7050. *See League of Women Voters of Florida v. Moody*, Case No. 4:23-cv-216, Doc. 1. Two other plaintiff groups, referred to here as the *Hispanic Federation* plaintiffs and the *NAACP* plaintiffs, challenged some of those same provisions shortly after the bill was signed.[2]

---

[1] In the alternative, the League moves to file a brief *amicus curiae* and participate in oral argument as *amicus*. Appellees do not oppose the League's motion to intervene. Appellant Secretary of State Cord Byrd opposes the League's motion to intervene and takes no position on its motion to participate as *amicus* if oral argument time is split between the appellees and the League. Appellant Attorney General Ashley Moody opposes the motion to intervene.

[2] *See Hispanic Federation v. Byrd*, Case No. 23-cv-218, Doc. 1; *Fla. State Conf. of Branches & Youth Units of the NAACP v. Byrd*, Case No. 4:23-cv-215, Doc. 1.

All three plaintiff groups quickly moved to preliminarily enjoin parts of the new law. The League asked the district court to enjoin four provisions, including the two at issue on this appeal: (1) the provision that fines 3PVROs $50,000 each time one of their volunteers who is not a U.S. citizen assists with voter registration (the Non-U.S. Citizen Volunteer Restriction, Fla. Stat. § 97.0575(1)(f)); and (2) the provision making it a third-degree felony for 3PVRO volunteers to retain any "personal information" of a voter registration applicant (the Voter Information Restriction, Fla. Stat. § 97.0575(7)). *See League of Women Voters*, Doc. 27, Mot. for Prelim. Inj. at 6-8. The *NAACP* plaintiffs moved to enjoin those same two provisions, while the *Hispanic Federation* plaintiffs moved to enjoin only the Non-U.S. Citizen Volunteer Restriction. *See NAACP*, Doc. 55-1, Mem. In. Supp. of Prelim. Inj. at 2; *Hispanic Federation*, Doc. 32, Mot. for Prelim. Inj. at 1.

The district court consolidated the three cases for purposes of the preliminary injunction hearing. *League of Women Voters*, Doc. 33.[3] On

---

[3] The court later fully consolidated the cases. *See League of Women Voters*, Doc. 52 at 1.

June 28, the court held consolidated argument on the motions, at which all three plaintiff groups appeared. *Id.*, Doc. 42.

On July 3, the district court granted the *NAACP* and *Hispanic Federation* preliminary injunction motions. It held that both plaintiff groups had shown a substantial likelihood of success on the claim that the Non-U.S. Citizen Volunteer Restriction violated the Equal Protection Clause[4] and that the *NAACP* plaintiffs had shown a substantial likelihood of success on the claim that the Voter Information Restriction was impermissibly vague. *See* Exhibit A at 37, 50.

Eight days later, the district court denied the League's preliminary injunction motion as to all four provisions it challenged. It held that the challenges to the Non-U.S. Citizen Volunteer Restriction and Voter Information Restriction were moot, concluding that its injunction in the *Hispanic Federation* and *NAACP* cases "provide facial relief and apply to the same Defendants." Exhibit B at 3. The court denied the motion on the remaining two challenged provisions for lack of standing. *Id.* at 18.

---

[4] The League's complaint did not challenge the Non-U.S. Citizen Volunteer Restriction on Equal Protection grounds, but alleged that the provision violated the First Amendment and was impermissibly vague. *See League of Women Voters*, Doc. 1 at 32, 38, 42, 46.

4

On July 11, appellants filed a notice of appeal in the *Hispanic Federation* and *NAACP* cases. *See Hispanic Federation*, Doc. 71; *NAACP*, Doc. 102. The League has not appealed the court's denial of its preliminary injunction motion.

## ARGUMENT

### I. Intervention on appeal is appropriate in this case, especially due to its uncommon procedural posture

Due to the League's unique position in this case as a party below that will otherwise be unable to participate in an appeal that affects the outcome of its claims, this Court should grant the League's motion to intervene.

The U.S. Supreme Court recently reiterated that "[n]o statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed." *Cameron v. EMW Women's Surgical Ctr.*, 142 S. Ct. 1002, 1010 (2022). Due to the absence of a rule, the Court has "considered the 'policies underlying intervention' in the district courts," and Federal Rule of Civil Procedure 24 in particular, when determining whether appellate intervention is appropriate. *Id.* (quoting *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. AFL-CIO, Loc. 283 v. Scofield*, 382 U.S. 205, 217 n.10 (1965)).

Consideration of those policies has led the Supreme Court, this Court, and others to grant intervention on appeal in various circumstances. *Cf. United States v. City of Detroit*, 712 F.3d 925, 932 (6th Cir. 2013) ("[C]ourts often permit intervention even after final judgment, for the limited purpose of appeal . . ."). In *Cameron*, for example, the Court held that the Court of Appeals for the Sixth Circuit should have granted the Kentucky attorney general's intervention motion because of the state's interest in defending its own laws and because intervention would not create excessive disruption. 142 S. Ct. at 1011-13; *see also Arizona v. Mayorkas*, 143 S. Ct. 1312 (2023) (vacating appellate court's order denying motion to intervene). In *Gonzalez v. Reno*, No. 00-11424-D, 2000 WL 502118 at *1 (11th Cir. Apr. 27, 2000), this Court granted a motion to intervene on appeal despite doubts about its timeliness because the plaintiff was a child, and the movant was the plaintiff's father who had recently arrived in the United States and gained custody of the child. *See also United States v. Laraneta*, 700 F.3d 983, 986 (7th Cir. 2012); *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1121 n.2 (11th Cir. 2005).

The unusual procedural posture of this case weighs heavily in favor of granting the League's motion to intervene. As explained in detail above, the League moved to preliminarily enjoin the two provisions at issue on this appeal, and the court consolidated all three plaintiff groups' preliminary injunction motions and held a joint hearing on them. The court then ruled on the two provisions at issue in this appeal in the *Hispanic Federation* and *NAACP* cases; it later denied as moot the League's challenges to those same two provisions because the provisions had already been enjoined. Thus, while the League was effectively granted relief on those two claims, the nominal denial means that it is not a party to this appeal. Without intervention, the League will be unable to protect its interests in ensuring the preliminary injunction remains in place.

Further, while some decisions suggest that appellate intervention should be granted only in "exceptional case[s]" if a litigant has not moved to intervene before the district court, *Hall v. Holder*, 117 F.3d 1222, 1231 (11th Cir. 1997), that principle plainly does not apply here. In contrast to the typical case, here the League was a *party* below in a case that was consolidated with the pending appeals, meaning that a motion to

intervene at the district court would have been nonsensical. Similarly, there is no concern about "procedural gamesmanship" in this case that should lead this Court to view the motion to intervene with skepticism. *Richardson v. Flores*, 979 F.3d 1102, 1105 (5th Cir. 2020).

## II. Plaintiffs have met the requirements of FRCP 24

Because the Supreme Court has held that "the policies underlying" Federal Rule of Civil Procedure 24 "may be applicable in appellate courts," *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. AFL-CIO, Loc. 283 v. Scofield*, 382 U.S. 205, 217 n.10 (1965), courts of appeals have often referred to that rule when deciding appellate intervention motions. *See, e.g.*, *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1102 (10th Cir. 2005); *Warren v. Comm'ner of Internal Revenue,* 302 F.3d 1012, 1015 (9th Cir. 2002); *Massachusetts Sch. of L. at Andover, Inc. v. United States*, 118 F.3d 776, 779 (D.C. Cir. 1997). Rule 24's requirements for both intervention as of right and permissive intervention are unmistakably satisfied here.

A. <u>The League has a right to intervene</u>

Rule 24(a) provides that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property

or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

### 1. *The League's motion is timely*

First, the League's motion is timely. "[T]imeliness is to be determined from all the circumstances" of the case. *Cameron*, 142 S. Ct. at 1012 (quotation marks omitted). In this circuit, "[t]he most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced" by any delay created by intervention. *Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019) (quotation marks omitted). "In fact, this may well be the only significant consideration when the proposed intervenor seeks intervention of right." *Id.* (quotation marks omitted).

In addition to prejudice to the existing parties, courts consider: (1) when the would-be intervenor should have known of his or her interest in the case; (2) "the prejudice that the would-be intervenor may suffer if

denied the opportunity to intervene"; and (3) "the existence of unusual circumstances weighing for or against a determination of timeliness." *Id.*

Here, no existing party will be harmed or prejudiced by the League's intervention, primarily because that intervention will create no delay. *See Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1294 (11th Cir. 2017) (holding that intervention did not prejudice existing parties because scheduled hearing took place without delay). If intervention is granted, the League will file its appellate brief on the same day as the other appellees, and nothing about the League's participation will cause the appeal to move more slowly.[5] Indeed, the existing appellees have consented to the League's intervention, confirming that it will not prejudice them. While the appellants have opposed intervention, they can make no plausible claim that simply responding to the League's legal arguments (which they did in the preliminary injunction briefing below), will prejudice them.[6] *See*

---

[5] Because the League will file a brief on the same schedule as appellees, this case differs starkly from cases such as *Craig v. Simon*, 980 F.3d 614, 618 n. 3 (8th Cir. 2020), in which intervention on appeal was denied because the motion was filed after briefing was completed.

[6] Nor can appellants plausibly claim that their opening briefs would have been materially affected if the League had moved to intervene before

*Cameron*, 142 S. Ct. at 1013 (holding that intervention on appeal should have been granted because it would not have created excessive disruption to the case).

By contrast, the League will suffer significant prejudice if it is precluded from protecting its interests on this appeal. The preliminary injunction granted in the *Hispanic Federation* and *NAACP* cases effectively provided the same relief the League had sought. Because of that injunction, the League may now conduct voter registration without an unconstitutional restriction on its members who are not United States citizens and without concern that it will face $50,000 fines if it inadvertently violates that restriction. Likewise, the League's members may retain voter registration applicants' names and contact information for purposes of encouraging them to vote or become a League member without risking felony prosecution. If the district court's decision is reversed, the League will lose that relief, just like the *Hispanic Federation* and *NAACP* appellees.

---

those briefs were filed. As with many appellate briefs, they focused on the district court's reasoning. Nothing about the League's participation would have changed that, and appellants will have the chance to respond to the League's arguments in their reply brief.

Moreover, the League's intervention motion comes shortly after its awareness of its existing interest in the case. *See Advance Loc. Media, LLC*, 918 F.3d at 1171. The League's motion comes just eight days after the Court's briefing order was issued, and just over six weeks after this appeal was docketed. *See Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1259-60 (11th Cir. 2002) (a delay of six months did not "in itself constitute[] untimeliness" where the "intervention did not delay the proceedings and the court had yet to take significant action"); *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (intervention motion was timely when filed seven months after original complaint and three months after defendant's motion to dismiss because discovery had not begun and no party was prejudiced). And the motion is filed only four days after the appellants' briefs were filed — a review of those briefs confirmed that the legal arguments raised by appellants squarely aligned with those litigated by the League below and that the League's involvement is necessary. For example, rather than disputing the district court's determination that the *Hispanic Federation* and *NAACP* plaintiffs had standing, appellants' briefs (1) depict 3PVROs as inherently problematic; (2) argue that 3PVRO volunteers serve a

"political function" and that non-U.S. citizens can therefore be prevented from volunteering; and (3) contend that the definition of "personal information" is not vague. *NAACP v. Byrd*, Case No. 23-12308, Appellants' Initial Brief, Doc. 29 at 2-5, 17-29.

  2. *The League meets the remaining requirements for intervention as of right in FRCP 24(a)(2)*

Under this Court's precedent, "[a]ll that is required under Rule 24(a)(2) is that the would-be intervener be practically disadvantaged by his exclusion from the proceedings." *Salvors,* 861 F.3d at 1295 (quotation marks omitted). Here, that disadvantage is clear. As explained above, the League has a direct and vital interest in this case: its preliminary injunction motion challenged the two provisions that are at issue in this appeal. And the League's ability to protect that interest hinges solely whether it can participate in this appeal — if the district court's decision is reversed, the League will have effectively lost its preliminary injunction motion without a decision on the merits, either from the district court or this Court, and will need to comply with a law that severely burdens its core activity of voter registration. *See Huff v. Comm'r of IRS*, 743 F.3d 790, 796 (11th Cir. 2014) (examining "practical impact" that an adverse decision would have on intervenors); *Stone v.*

13

*First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (considering "negative stare decisis effects" when determining practical impairment intervenors could face).

Nor do any of the existing parties adequately represent the League's interests, which are distinct from those of the *Hispanic Federation* and *NAACP* plaintiff groups. Importantly, the League need only show that representation by other groups "*may* be inadequate . . . and the burden for making such a showing is minimal." *Stone*, 371 F.3d at 1311-12 (quotation marks omitted) (emphasis added) (noting that presumption of adequate representation is weak and holding that inadequate representation showing was met when intervenors might want "to emphasize different aspects" of defendant's employment policies). And this Court has explained that "[t]he fact that [litigants'] interests are similar does not mean that approaches to litigation will be the same." *Chiles*, 865 F.2d at 1214.

While the League and the other plaintiff groups each seek affirmance of the district court's injunction, their claims in the lawsuits differ, meaning their approaches to litigation may differ as well. For instance, the League's challenge to the Non-U.S. Citizen Volunteer

Restriction is based principally on a First Amendment claim, while the district court enjoined that provision on Equal Protection grounds. *See* Exhibit A at 37. While the Equal Protection and First Amendment analyses overlap, the League has an independent interest in ensuring that First Amendment principles are considered when this Court assesses the propriety of the injunction. Further, the League has challenged the provision in SB 7050 requiring that 3PVROs provide a receipt to each voter registration applicant (the Receipt Requirement). *See League of Women Voters*, Doc. 1  at 32, 35.  Neither of the other plaintiff groups have challenged that requirement. And while that provision of SB 7050 is not one of the two directly at issue on this appeal, the League's vagueness arguments concerning the Voter Information Restriction and the Receipt Requirement are intertwined, meaning that its argument in favor of the injunction of the Voter Information Restriction could differ from that of the other appellees. *See League of Women Voters*, Doc. 27 at 43-44.

Aside from differences in legal strategy, the League maintains a distinct interest in this appeal because of its longstanding status as a volunteer-run organization whose core activity is voter registration and

turnout that has litigated many cases to protect voters in the state. For years, the League has sought federal and state court intervention when it believes state law has infringed on voters' rights. *See*, *e.g.*, *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905 (11th Cir. 2023); *League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155 (N.D. Fla. 2012); *League of Women Voters of Fla. v. Cobb*, 447 F. Supp. 2d 1314 (S.D. Fla. 2006); *League of Women Voters of Fla. v. Detzner*, 172 So. 3d 363 (Fla. 2015). The League's decades of work seeking to protect voters in court has left it uniquely positioned to participate here, especially considering that the challenged provisions of SB 7050 directly implicate the viability of its voter registration program.

B. Permissive intervention is also appropriate

A court may permit anyone to intervene in a case if they file a timely intervention motion and have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). This Court has held that permissive intervention is "wholly discretionary," *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996) (citation omitted), although courts should consider the same factors when assessing permissive intervention that they do when

16

assessing intervention as of right. *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1366 (11th Cir. 1984).

The court should exercise its discretion to grant permissive intervention here. As explained in Section II.A.1., *supra*, the League's motion is timely, and its case unquestionably shares common questions of law with the main action here. And because of the anomalous procedural posture of this case, intervention is necessary to serve the ends of justice: the League is a party to the consolidated case below, and the district court's preliminary injunction provided the relief it requested. To preclude the League from protecting its interests by playing a role in this appeal would severely undermine fundamental fairness principles.[7]

## CONCLUSION

For these reasons, this Court should grant the League's motion for intervention on appeal. In the alternative, the Court should grant the

---

[7] The League does not separately address standing in this motion because "'a party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24 as long as there exists a justiciable case or controversy between the parties already in the lawsuit.'" *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1336 (11th Cir. 2007) (quoting *Chiles*, 865 F.2d at 1213).

League permission to file a brief *amicus curiae* and participate in oral

argument as *amicus*.


Respectfully Submitted,

                                        /s/ *Danielle M. Lang*
                                        Danielle M. Lang (D.C. Bar No. 1500218)
Chad W. Dunn                            Brent Ferguson* (D.C. Bar No. 1782289)
Florida Bar No. 0119137                 Jonathan Diaz (D.C. Bar No. 1613558)
BRAZIL & DUNN                           Ellen Boettcher* (D.C. Bar No. 90005525)
1200 Brickell Avenue                    Simone Leeper* (D.C. Bar No. 1737977)
Suite 1950                              CAMPAIGN LEGAL CENTER
Miami, FL 33131                         1101 14th Street NW, Ste. 400
Telephone: (305) 783-2190               Washington, DC 20005
Facsimile: (305) 783-2268               (202) 736-2200
chad@brazilanddunn.com                  bferguson@campaignlegal.org
                                        dlang@campaignlegal.org
                                        jdiaz@campaignlegal.org
                                        eboettcher@campaignlegal.org
                                        sleeper@campaignlegal.org

                                        ***Application for Admission to the 11th
                                        Circuit Forthcoming***

                                        *Counsel for Proposed Intervenors*

18

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because it contains 3,464 words as counted by the word-processing system used to prepare it.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.


Dated: August 25, 2023

*/s/ Danielle M. Lang*
Danielle M. Lang
*Counsel for Proposed Intervenors*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on August 25, 2023. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: August 25, 2023

/s/ Danielle M. Lang
Danielle M. Lang
*Counsel for Proposed Intervenors*

20