Nos. 23-12308 & 23-12313

———————————————

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

———————————————

FLORIDA STATE CONFERENCE OF BRANCHES AND YOUTH
UNITS OF THE NAACP, *et al.*
*Plaintiffs-Appellees,*

v.

CORD BYRD, *et al.,*
*Defendants-Appellants.*

———————————————

HISPANIC FEDERATION, *et al.*
*Plaintiff-Appellee,*

v.

CORD BYRD, in his official capacity as
FLORIDA SECRETARY OF STATE, *et al.,*
*Defendants-Appellants.*

———————————————

On Appeal from the United States District Court
for the Northern District of Florida
No. 4:23-cv-215 (Walker, C.J.)

———————————————

## BRIEF *AMICUS CURIAE* OF LEAGUE OF WOMEN VOTERS OF
## FLORIDA IN SUPPORT OF PLAINTIFFS-APPELLEES

———————————————

Oral Argument Time Requested*


Chad W. Dunn                    Danielle M. Lang (D.C. Bar No. 1500218)
Florida Bar No. 0119137         Brent Ferguson (D.C. Bar No. 1782289)
BRAZIL & DUNN                   Jonathan Diaz (D.C. Bar No. 1613558)
1200 Brickell Avenue            Christopher Lapinig (CA Bar No. 322141)

i

Suite 1950
Miami, FL 33131
Telephone: (305) 783-2190
Facsimile: (305) 783-2268
chad@brazilanddunn.com

Ellen Boettcher (D.C. Bar No. 90005525)
Simone Leeper (D.C. Bar No. 1737977)
Michael Ortega (IL Bar No. 6339469)**
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Ste. 400
Washington, DC 20005
(202) 736-2200
bferguson@campaignlegal.org
dlang@campaignlegal.org
jdiaz@campaignlegal.org
clapinig@campaignlegal.org
eboettcher@campaignlegal.org
sleeper@campaignlegal.org
mortega@campaignlegal.org

*Counsel for Amicus Curiae League of
Women Voters of Florida*

\* *Amicus* agrees with appellees that the issues on this appeal may be resolved on the papers. However, if oral argument is held, LWVFL seeks leave to participate.

\*\* *Pro hac vice* application forthcoming

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 and 26.1-2, the undersigned counsel for Plaintiffs at consolidated hearing and Amicus Curiae League of Women Voters of Florida submit the following statement of their corporate interests:

1.  Plaintiff at consolidated hearing and Amicus Curiae the League of Women Voters of Florida, Inc. neither has a parent corporation nor issues stock. There are no publicly held corporations that own ten percent or more of the stock of the League of Women Voters of Florida, Inc. The League of Women Voters of Florida, Inc. is an affiliate of the League of Women Voters of the United States.

2.  Plaintiff at consolidated hearing and Amicus Curiae the League of Women Voters of Florida Education Fund neither has a parent corporation nor issues stock. There are no publicly held corporations that own ten percent or more of the stock of the League of Women Voters of Florida Education Fund. The League of Women Voters of Florida Education Fund is an affiliate of the League of Women Voters of the United States.

Under Circuit Rule 26.1-1(a)(3), Plaintiffs-Appellees further certify that the following persons have an interest in the outcome of this case:

1. Adkins, Janet, *Defendant*

2. Alianza Center, *Plaintiff*

3. Alianza for Progress, *Plaintiff*

4. Alicea, Delmarie, *Counsel for Plaintiffs*

5. Andersen, Mark, *Defendant*

6. Anderson, Chris, *Defendant*

7. Anderson, Shirley, *Defendant*

8. Arnold, Melissa, *Defendant*

9. Arrington, Mary Jane, *Defendant*

10. Artasanchez, Santiago Mayer, *Plaintiff*

11. Babis, Olivia, *Declarant for Plaintiffs*

12. Baird, Maureen, *Defendant*

13. Bardos, Andy, *Counsel for Defendants*

14. Barton, Kim, *Defendant*

15. Beato, Michael, *Counsel for Defendant*

16. Bell, Daniel W., *Counsel for Defendant*

17.    Benda, Kyle, *Counsel for Defendant*

18.    Bennett, Michael, *Defendant*

19.    Blazier, Melissa, *Defendant*

20.    Bledsoe, William, *Counsel for Defendant*

21.    Bobanic, Tim, *Defendant*

22.    Boettcher, Ellen Margaret, *Counsel for Plaintiffs at consolidated hearing and Amicus Curiae*

23.    Boltrek, William, III, *Counsel for Defendants*

24.    Brown, Tomi, *Defendant*

25.    Byrd, Cord, *Defendant*

26.    Campbell-Harris, Dayton, *Counsel for Plaintiffs*

27.    Cannon, Starlet, *Defendant*

28.    Cepeda Derieux, Adriel I., *Counsel for Plaintiffs*

29.    Chambless, Chris, *Defendant*

30.    Chappell, David W., *Counsel for Defendant*

31.    Chason, Sharon, *Defendant*

32.    Conyers, Grant, *Defendant*

33.    Corley, Brian, *Defendant*

34.    Cowles, Bill, *Defendant*

35.   Cruz, Roberto, *Counsel for Plaintiffs*

36.   Darlington, Andrew, *Declarant for Defendants*

37.   Davis, Ashley, *Counsel for Defendant*

38.   Davis, Vicky, *Defendant*

39.   Davis, Vicky, *Defendant*

40.   Diaz, Jonathan Michael, *Counsel for Plaintiffs at consolidated hearing and Amicus Curiae*

41.   Disability Rights Florida, *Plaintiff*

42.   Doe, A., *Plaintiff*

43.   Doyle, Tommy, *Defendant*

44.   Driggers, Heath, *Defendant*

45.   Dunaway, Carol, *Defendant*

46.   Dunn, Chad, *Counsel for Plaintiffs at consolidated hearing and Amicus Curiae*

47.   Earley, Mark, *Defendant*

48.   Ebenstein, Julie A., *Counsel for Plaintiffs*

49.   Edwards, Jennifer, *Defendant*

50.   Edwards, Lori, *Defendant*

51.   Ellis, Rayne, *Counsel for Plaintiffs*

52.  Erdelyi, Susan, *Counsel for Defendants*

53.  Farnam, Aletris, *Defendant*

54.  Feiser, Craig, *Counsel for Defendant*

55.  Ferguson, Robert Brent, *Counsel for Plaintiffs at consolidated hearing and Amicus Curiae*

56.  Florez, Johana, *Declarant for Plaintiffs*

57.  Florida Alliance for Retired Americans, *Plaintiff*

58.  Florida State Conference of Branches and Youth Units of the NAACP, *Plaintiff*

59.  Freedman, John A., *Counsel for Plaintiffs*

60.  Galindo, Miranda, *Counsel for Plaintiffs*

61.  Glickman, Jessica, *Counsel for Defendant*

62.  Griffin, Joyce, *Defendant*

63.  Guzzo, Sophia, *Counsel for Defendant*

64.  Hankins, Christi, *Counsel for Defendant*

65.  Hanlon, John, *Defendant*

66.  Hart, Travis, *Defendant*

67.  Hays, Alan, *Defendant*

68.  Healy, Karen, *Defendant*

69. Herrera-Lucha, Veronica, *Plaintiff*

70. Herron, Mark, *Counsel for Defendant*

71. Hispanic Federation, *Plaintiff*

72. Hogan, Mike, *Defendant*

73. Hoots, Brenda, *Defendant*

74. Hutto, Laura, *Defendant*

75. Jarone, Joseph, *Counsel for Defendant*

76. Jazil, Mohammad O., *Counsel for Defendant*

77. Johnson, Diana, *Counsel for Defendant*

78. Johnson, Melinda, *Counsel for Plaintiffs*

79. Jonas, Sarah, *Counsel for Defendant*

80. Jones, Tammy, *Defendant*

81. Joshi, Raghav Vikas, Declarant for Plaintiffs

82. Kahn, Jared, *Counsel for Defendant*

83. Karpatkin, Jeremy, *Counsel for Plaintiffs*

84. Keen, William, *Defendant*

85. Keenan, Megan C., *Counsel for Plaintiffs*

86. Khanna, Abha, *Counsel for Plaintiffs*

87. Kinsey, Jennifer, *Defendant*

88. Klitsberg, Nathaniel, *Counsel for Defendant*

89. Knight, Shirley, *Defendant*

90. Konor, Estee M., *Counsel for Plaintiffs*

91. Lang, Danielle Marie, *Counsel for Plaintiffs at consolidated hearing and Amicus Curiae*

92. Lapinig, Christopher, *Counsel for Plaintiffs at consolidated hearing and Amicus Curiae*

93. Latimer, Craig, *Defendant*

94. LaVia, John, III, *Counsel for Defendants*

95. League of Women Voters of Florida Education Fund, Inc., *Plaintiff at consolidated hearing and Amicus Curiae*

96. League of Women Voters of Florida, Inc., *Plaintiff at consolidated hearing and Amicus Curiae*

97. Leeper, Simone Tyler, *Counsel for Plaintiffs at consolidated hearing and Amicus Curiae*

98. Lenhart, Kaiti, *Defendant*

99. Lewis, Lisa, *Defendant*

100. Lin Lakin, Sophia, *Counsel for Plaintiffs*

101. Link, Wendy, *Defendant*

102. Lux, Paul, *Defendant*

103. Madduri, Lalitha, *Counsel for Plaintiffs*

104. Marcus, Julie, *Defendant*

105. Mari, Frank, *Counsel for Defendants*

106. Markarian, David, *Counsel for Defendant*

107. Martínez, Norka, *Plaintiff*

108. McNamara, Caroline A., *Counsel for Plaintiffs*

109. McVay, Bradley R., *Counsel for Defendant*

110. Meadows, Therisa, *Defendant*

111. Messer, Ryan, *Defendant*

112. Milligan, Michelle, *Defendant*

113. Milton, Christopher, *Defendant*

114. Moody, Ashley, *Defendant*

115. Morgan, Joseph, *Defendant*

116. Morse, Stephanie, *Counsel for Defendant*

117. Negley, Mark, *Defendant*

118. Nordlund, Jared, *Declarant for Plaintiffs*

119. Nweze, Adora Obi, *Declarant for Plaintiffs*

120. O'Donnell, Renata, *Counsel for Plaintiffs*

121. Oakes, Vicky, *Defendant*

122. Ortega, Michael, *Counsel for Plaintiffs at consolidated hearing and Amicus Curiae*

123. Osborne, Deborah, *Defendant*

124. Overturf, Charles, *Defendant*

125. Perez, Devona Reynolds, *Counsel for Defendant*

126. Pico, Elizabeth, *Plaintiff*

127. Poder Latinx, *Plaintiff*

128. Pratt, Joshua E., *Counsel for Defendant*

129. Preminger, Evan, *Counsel for Plaintiffs*

130. Riley, Heather, *Defendant*

131. Rudd, Carol, *Defendant*

132. Ruiz, Cesar Z., *Counsel for Plaintiffs*

133. Rutahindurwa, Makeba, *Counsel for Plaintiffs*

134. Sanchez, Connie, *Defendant*

135. Sanchez, Esperanza, *Plaintiff*

136. Schenck, Robert S., *Counsel for Defendant*

137. Scott, Dale, *Counsel for Defendant*

138. Scott, Joe, *Defendant*

139. Seyfang, Amanda, *Defendant*

140. Shannin, Nicholas, *Counsel for Defendant*

141. Shaud, Matthew, *Counsel for Defendant*

142. Sjostrom, Noah, *Counsel for Defendant*

143. Slater, Cynthia, *Declarant for Plaintiffs*

144. Smith, Diane, *Defendant*

145. Southerland, Dana, *Defendant*

146. Stafford, David, *Defendant*

147. Stewart, Gregory, *Counsel for Defendant*

148. Swain, Robert, *Counsel for Defendant*

149. Swan, Leslie, *Defendant*

150. Tilley, Daniel B., *Counsel for Plaintiffs*

151. Todd, Stephen, *Counsel for Defendant*

152. Turner, Ron, *Defendant*

153. UnidosUS, *Plaintiff*

154. Valdes, Michael, *Counsel for Defendant*

155. Valenti, Leah, *Defendant*

156. Van De Bogart, Joseph, *Counsel for Defendant*

157. Vargas De-Leon, Fulvia, *Counsel for Plaintiffs*

158. Vilar, Marcos, *Declarant for Plaintiffs*

159. Villane, Tappie, *Defendant*

160. Voters of Tomorrow Action, Inc., *Plaintiff*

161. Walker, Gertrude, *Defendant*

162. Walker, Mark E., *U.S. District Court Judge*

163. Warren, Nicholas L.V., *Counsel for Plaintiffs*

164. Wermuth, Frederick, *Counsel for Plaintiffs*

165. Whitaker, Henry, *Counsel for Defendant*

166. Whitaker, Henry, *Counsel for Defendant*

167. White, Christina, *Defendant*

168. Wilcox, Wesley, *Defendant*

# TABLE OF CONTENTS

TABLE OF CITATIONS ....................................................................xv

STATEMENT OF AMICUS CURIAE.................................................... 1

STATEMENT OF THE ISSUES......................................................... 2

SUMMARY OF THE ARGUMENT ..................................................... 2

ARGUMENT ....................................................................... 6

I. The District Court Correctly Determined that the Non.-U.S. Citizen Volunteer Restriction Likely Violates the Equal Protection Clause .. 6

    A. This Court should reject appellants' various attempts to avoid standard application of strict scrutiny to the entire provision .. 6

        1. *Appellants rely on a new legal theory on appeal, meaning that their current argument is waived and the argument they made below is abandoned* ................................................ 6

            a. *Appellants waived their* Salerno-*based argument* ................................................................ 8

            b. *Appellants abandoned their argument that the statute should be severed*...................................................... 9

        2. *Appellants' Salerno-based argument invites misreading the Supreme Court's alienage jurisprudence* ........................ 11

    B. The political function exception is clearly inapplicable here ........................................................................ 14

II. The District Court Correctly Determined that the Voter Information Restriction Is Likely Unconstitutionally Vague ............................... 19

    A. The district court applied the proper standard for vagueness ......................................................................... 19

    B. The district court correctly held that the Voter Information Restriction is unconstitutionally vague........................... 22

CONCLUSION .................................................................. 29

# TABLE OF CITATIONS

**Cases**                                                                 **Page**

*Access Now, Inc. v. Sw. Airlines Co.,*
  385 F.3d 1324 (11th Cir. 2004)................................................7, 9, 10

*Ambach v. Norwick*, 441 U.S. 68 (1979) .......................................... 15

*Bernal v. Fainter*, 467 U.S. 216 (1984) ............................15, 16, 18, 19

*Bluman v. FEC*, 800 F. Supp. 2d 281 (D.D.C. 2011) ........................ 17

*Boos v. Barry*, 485 U.S. 312 (1988) .................................................. 21

*Bridges v. Wixon*, 326 U.S. 135 (1945)............................................. 17

*Brown v. Alabama Dep't of Transp.,*
  597 F.3d 1160 (11th Cir. 2010)..................................................... 11

*Cervantes v. Guerra*, 651 F.2d 974 (5th Cir. 1981).......................15, 16

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010)... 18 n.6

*Dandamudi v. Tisch*, 686 F.3d 66 (2nd Cir. 2012) .......................12, 14

*Dream Defs. v. Governor of the State of Fla.,*
  57 F.4th 879 (11th Cir. 2023) ...................................................21, 22

*Foley v. Connelie*, 435 U.S. 291 (1978)............................................. 15

*GeorgiaCarry.org, Inc. v. City of Atlanta,*
  602 F. Supp. 2d 1281 (N.D. Ga. 2008)........................................... 27

*Graham v. Richardson*, 403 U.S. 365 (1971) ...............................12, 13

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ............................. 20

*In re Murphy-Brown, LLC*, 907 F.3d 788 (4th Cir. 2018) ................. 25

*Kolender v. Lawson*, 461 U.S. 352 (1983) .......................................... 21

*Manning v. Caldwell for City of Roanoke*,
    930 F.3d 264 (4th Cir. 2019) ........................................................ 22

*Nyquist v. Mauclet*, 432 U.S. 1 (1977) ................................................ 13

*Ocampo v. U.S. Atty. Gen.*, 346 F. App'x 565 (11th Cir. 2009) .......... 10

*Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239
    (11th Cir. 2012) ......................................................................... 9 n.3

*Reno v. ACLU*, 521 U.S. 844 (1997) ............................................ 11 n.4

*Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1110 (11th Cir. 2020)... 8

*Stewart v. Dep't of Health & Hum. Servs.*, 26 F.3d 115
    (11th Cir. 1994) .............................................................................. 8

*United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017) ......... 26

*United States v. Osorto,* 995 F.3d 801 (11th Cir. 2021) .................... 14

*United States v. Salerno*, 481 U.S. 739 (1987) ................................ 3, 7

*United States v. Williams*, 553 U.S. 285 (2008) ................................ 20

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
    455 U.S. 489, (1982) ...................................................................... 20

*Watkins v. Brown*, 173 F. Supp. 2d 409 (D. Md. 2001) ...................... 28

*Wright v. Hanna Steel Corp.*, 270 F.3d 1336 (11th Cir. 2001) ..... 9 n.3

## Statutes and Other Authorities

Fla. Admin. Code 1s-2.042(3)(c) .................................................. 24 n.7

Fla. Admin. Code 1S-2.042(5)(g) ...................................................... 29

Fla. Stat. § 97.0575(7) ...................................................................... 19

## STATEMENT OF AMICUS CURIAE

The League of Women Voters of Florida Education Fund and the League of Women Voters of Florida, Inc. (collectively, LWVFL or the League) file this brief and request oral argument time (if oral argument is held) pursuant to Fed. R. App. P. 29(a)(8) due to their strong interest in upholding the district court's preliminary injunction.

If oral argument is held, the League's participation is appropriate here because the League has challenged the same two provisions of Senate Bill 7050 at issue in this appeal.[1] *See* LWVFL Mtn. to Intervene, Doc. 30-1 at 8.[2] Further, like appellees, the League moved for a preliminary injunction to stop enforcement of those provisions. The League's motion was denied as moot because the district court had already granted the preliminary injunction requested by appellees. *See League of Women Voters*, Doc. 46 at 3. Thus, this Court's decision will affect the League in the same way it will affect appellees.

---

[1] The League's case has been consolidated with those of the appellees. *See League of Women Voters of Florida v. Moody*, Case No. 4:23-cv-216, Doc. 33, 52.

[2] Pursuant to 11th Cir. R. 28-5, page numbers for documents filed in this appeal and in the district court correspond with the page number that appears in the header generated by the court's filing system.

All parties have consented to the filing of this brief. No party's counsel authored this brief in whole or in part, and no party, party's counsel, or other person contributed money intended to fund preparation or submission of the brief.

## STATEMENT OF THE ISSUES

1. Whether the district court abused its discretion when it determined that appellees were substantially likely to succeed on the merits of their claim that Fla. Stat. § 97.0575(1)(f) (the Non-U.S. Citizen Volunteer Restriction) violates the Equal Protection Clause.

2. Whether the district court abused its discretion when it determined that NAACP appellees were substantially likely to succeed on the merits of their claim that Fla. Stat. § 97.0575(7) (the Voter Information Restriction) is unconstitutionally vague.

## SUMMARY OF THE ARGUMENT

The district court correctly enjoined the two provisions at issue on this appeal.

The Non-U.S. Citizen Volunteer Restriction, which prevents all non-citizens from working as volunteers with third-party voter registration organizations (3PVROs), violates the Equal Protection

2

Clause. On this appeal, appellants present a newfound theory that under *United States v. Salerno*, 481 U.S. 739 (1987), the provision should be upheld in full if it can be constitutionally applied to any person. But aside from misunderstanding the law, that argument is waived because it was never made below. And appellants have now abandoned their previous argument that even if the law is unconstitutional, it should partially survive and continue to apply to some subgroups of non-citizens. Thus, this Court must apply strict scrutiny and invalidate the entire provision if it fails.

Waiver aside, appellants' *Salerno*-based "no set of circumstances" approach would be improper here. *Id*. at 745. When the Supreme Court has reviewed laws that apply to all non-citizens, each time it has applied strict scrutiny to the entire provision; it has never examined whether the law could be permissibly applied to some group of non-citizens nowhere identified in the statute. Lower courts have employed the same analysis after *Salerno*, and appellants have not cited a single case upholding a law that applies to all non-citizens on the grounds that it could be constitutionally applied to some subgroup of non-citizens.

Nor can the law be saved by reliance on the political function exception to standard equal protection jurisprudence. That exception applies to government positions with discretionary power, not volunteers who are "cogs in the wheel" of a government process. And even appellants have not claimed that the law's purpose is to ban non-citizens from volunteering *because* they would be exercising a political function; they assert instead that non-citizens could suddenly be deported or leave the country, and would therefore be unable to timely submit voter registration applications they had already collected.

The district court also correctly enjoined the Voter Information Restriction because it is unconstitutionally vague. First, it is unclear whose conduct the law regulates. Appellants now maintain that it applies only to volunteers who receive applications directly from prospective voters, but the statute's language would just as easily encompass supervisors who collect completed applications from volunteers. Nor have appellants explained why it would make sense to prevent retention of voters' personal information by those who collect information directly from a voter, but allow others with access to applications to retain that same information.

4

The statute also fails to define which "personal information" 3PVROs may not retain. Appellants seek to import a definition of the term from Florida's public records law, but that definition conflicts with how this Court has previously defined it. And appellants do not explain why their chosen cross-reference, mentioned nowhere in the statute, should control. Moreover, appellants have defined personal information differently on separate pages of their own briefing in this case.

Finally, the law does not tell 3PVROs what they may not do with registrants' information. The law prohibits an individual from retaining the information for any reason other than providing it to the 3PVRO, but nothing in the law addresses whether other individuals who work for the 3PVRO may retain the information in order to contact the registrant to remind them to vote or ask them to volunteer.

*    *    *

The district court reached the correct decision when it granted a preliminary injunction on July 3rd, and 3PVROs across the State have operated without two of SB 7050's unconstitutional restrictions since then. With the next voter registration deadline coming on February 20,

just weeks after oral argument is scheduled in this case, this Court should leave the injunction in place.

## ARGUMENT

## I.    The District Court Correctly Determined that the Non.-U.S. Citizen Volunteer Restriction Likely Violates the Equal Protection Clause

A. <u>This Court should reject appellants' various attempts to avoid standard application of strict scrutiny to the entire provision</u>

> 1. *Appellants rely on a new legal theory on appeal, meaning that their current argument is waived and the argument they made below is abandoned*

Supreme Court case law makes clear how courts should proceed when reviewing a law that treats citizens and non-citizens differently: apply strict scrutiny and invalidate the provision if it fails. *See* Part I.A.2., *infra*. Appellants have now presented two distinct legal theories to try to avoid that standard method of applying strict scrutiny. First, before the district court, appellants maintained that the court should partially uphold the Non-U.S. Citizen Volunteer Restriction, applying different tiers of scrutiny and allowing the law to be applied to certain groups of non-citizens. *See* Def. Resp. Br., *Hispanic Federation v. Byrd,* Case No. 23-cv-218, Doc. 60 at 27-28; Oral Arg. Tr., *Florida State Conference of Branches & Youth Units of the NAACP v. Byrd*, Case No. 4:23-cv-215,

6

Doc. 99 at 94-95. The district court properly refused to "subject the challenged provision to varying levels of scrutiny based on subgroups that exist nowhere in the statute." *See* Order Granting Prelim. Injunction (PI Order), *NAACP*, Doc. 101 at 28. Now, for the first time on appeal, appellants argue that under *United States v. Salerno*, 481 U.S. 739 (1987), the *entire* provision should survive if it can be constitutionally applied to any person.

As appellees point out, appellants' *Salerno*-based argument is waived because they did not raise it in the district court. But appellants have now also abandoned the argument they made below asking the court to sever the law and uphold any constitutional applications. With those two erroneous approaches unavailable, this Court is left with the typical (and correct) approach in equal protection cases: applying strict scrutiny to the provision as it is written. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (declining to review merits of either appellate argument or district court argument because appellants changed legal theories on appeal).

7

a. *Appellants waived their* Salerno-*based argument*

Appellants waived their argument that the entire Non-U.S. Citizen Volunteer Restriction should be upheld if it can be constitutionally applied to any person. Instead of asking the district court to take that approach, they asserted that the statute could be severed and upheld as applied to certain groups. *See* Def. Resp. Br., *Hispanic Fed.*, Doc. 60 at 27-28; Oral Arg. Tr., *NAACP*, Doc. 99 at 94-95.

This Court has held time and again that in most circumstances, an argument not made before the district court may not be made on appeal. *Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1110 (11th Cir. 2020) ("As a general principle, this court will not address an argument that has not been raised in the district court.") (quotation marks omitted). The preservation requirement is not a mere formality. Rather, the rule is intended to maintain a fundamental premise of our adversary system by "afford[ing] the district court an opportunity to recognize and rule on" the argument at issue. *Ruckh*, 963 F.3d at 1111. Further, "[j]udicial economy is served and prejudice is avoided by binding the parties to the facts presented and the theories argued below." *Stewart v. Dep't of Health & Hum. Servs.*, 26 F.3d 115, 115 (11th Cir. 1994) (quotation marks omitted).

Importantly, the preservation rule applies not just to entire legal claims, but also to legal *theories* supporting claims and defenses like the "no set of circumstances" theory appellants advance here. For example, in *Access Now*, the plaintiffs argued that Southwest Airlines had violated the Americans with Disabilities Act. 385 F.3d at 1325. To succeed, they needed to establish that Southwest operated a place of public accommodation. This Court refused to consider their argument that "Southwest Airlines as a whole [was] a place of public accommodation," because below they had argued only that the airline's website was a place of public accommodation. *Id*. at 1328. Thus, as in *Access Now*, this Court should refuse to review an argument that the district court "never had a chance to examine." *Id*. at 1331.[3]

---

[3] Nor could appellants plausibly contend that an exception to the preservation rule applies. Some cases have reviewed unpreserved arguments if failure to do so would result in a "miscarriage of justice." *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1342 (11th Cir. 2001). But those cases involve situations much different than the one here — for example "it would defeat the 'interests of substantial justice' to apply the waiver rule to a pro se litigant on an issue that was decided in his favor" in separate proceedings. *Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1250 (11th Cir. 2012).

b. *Appellants abandoned their argument that the statute should be severed*

By switching theories on appeal, appellants have also abandoned the argument they made to the district court that the law should be partially salvaged if any of its applications are constitutional.

"[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now,* 385 F.3d at 1330. That is because of "the obvious need to avoid confusion" and because "[i]f an argument is not fully briefed (let alone not presented at all) to the Circuit Court . . . the appellee would have no opportunity to respond to it." *Id*. (citation omitted). Like this Court's law on waiver, the abandonment rule applies to each discrete theory advanced to support a claim or defense. *See, e.g., Ocampo v. U.S. Atty. Gen.*, 346 F. App'x 565, 568 (11th Cir. 2009) (refusing to consider petitioner's legal theory supporting asylum claim "because she did not assert that theory on appeal").

Here, appellants' theory that some applications of the Non-U.S. Citizen Volunteer Restriction should be upheld "has not been briefed before the court." *Access Now,* 385 F.3d at 1330. Their opening brief addresses varying tiers of scrutiny only to contend that the entire

provision should be upheld under *Salerno*. Appellants' Br., *Hispanic Fed.
v. Byrd*, Case No. 23-12313, Doc. 21 (hereinafter Appellants' Br.) at 23-
27. That approach leaves this Court without any argument or case law
from appellants explaining how or when statutory provisions should be
partially upheld. Any attempt to revive that theory on this appeal should
be rejected. *See Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1175
n.8 (11th Cir. 2010) (appellant abandoned argument by "fail[ing] to
include it in its opening brief on appeal" and raising it only in reply
brief).[4]

2. *Appellants' Salerno-based argument invites misreading the
Supreme Court's alienage jurisprudence*

In addition to being waived, appellants' *Salerno*-based "no set of
circumstances" argument flies in the face of black-letter equal-protection
doctrine. For more than half a century, the Supreme Court has made
clear that state-law alienage classifications merit strict-scrutiny review,

---

[4] Appellants' attempt to save part of the statute would fail even if it were
not abandoned. In *Reno v. ACLU*, 521 U.S. 844 (1997), the Supreme
Court explained that it is improper to "rewrite a law to conform it to
constitutional requirements," even if the law's severability clause
instructs courts to uphold any part of the law that might be applied in a
constitutional manner. *Id.* at 884-85 (quotation marks omitted). Here,
such maneuvering would be even more inappropriate than it would have
been in *Reno v. ACLU* because SB 7050 contains no severability clause.

even when the classifications are narrower than the total ban here. *Graham v. Richardson*, 403 U.S. 365, 372 (1971). Appellants offer no persuasive justification for abandoning this bedrock principle for the first time here.

The Supreme Court built its alienage jurisprudence on facial challenges to statutes like Florida's Non-U.S. Citizen Volunteer Restriction. Like the plaintiffs here, the plaintiffs in the Court's landmark cases challenged provisions that classified broadly against non-citizens. *See* NAACP Appellees' Br., Doc. 45 at 28-29 (collecting cases). As the Second Circuit recognized, the plaintiffs in the Supreme Court's alienage cases argued "that the statutes were unconstitutional *on their face* because they drew explicit distinctions between citizens and non-citizens, not just because a state had interpreted a statute to deny benefits to a group of aliens." *Dandamudi v. Tisch*, 686 F.3d 66, 73 n.8 (2d Cir. 2012) (emphasis added).

Moreover, when resolving facial challenges to alienage classifications, the Supreme Court has applied strict scrutiny even to narrower statutes than the one at issue here. *Graham* itself was such a classification: there, Arizona excluded from financial assistance

programs only non-citizens who had resided in the United States for less than fifteen years. *Graham*, 403 U.S. at 367. The Court declined to analyze the provision's constitutionality as applied only to those excluded, even when the statute created a subgroup of non-citizens. Instead, the Court reaffirmed the broad principle that the Fourteenth Amendment "entitles both citizens and aliens to the equal protection of the laws." *Graham*, 403 U.S. at 371. If the Supreme Court employs strict scrutiny when reviewing a law that excludes some, but not all, non-citizens, there is no question that this Court should apply strict scrutiny to Florida's total exclusion of non-citizen volunteers.

Likewise, the Court has applied strict scrutiny to laws that "served to discriminate only within the class of aliens." *Nyquist v. Mauclet*, 432 U.S. 1, 8 (1977). In *Nyquist*, which involved a New York law that made college scholarships available to non-citizens only if they sought citizenship, the Court also emphasized that in determining the proper standard of review, "the important points are that [the statute] is directed at aliens and that only aliens are harmed by it." *Id*. at 9.

Nothing about *Salerno* changes this analysis, as demonstrated by appellants' failure to point to a single case in which a court has taken the

path they suggest is required. Although the Supreme Court has not heard an alienage-classification challenge since *Salerno*, lower courts have correctly continued to apply strict scrutiny to entire statutory provisions without engaging in the thought experiments appellants invite. In *Dandamudi*, for example, a New York law prevented non-citizens other than legal permanent residents from obtaining a pharmacist's license. 686 F.3d. at 69. Despite recognizing the distinctions between lawfully admitted non-citizens and those who are undocumented, the Court applied strict scrutiny and affirmed the district court's order enjoining the law's enforcement. *Id*. at 70-71, 74. Contrary to what appellants advocate here, the Court did *not* ask whether the law could be constitutionally applied to any group of non-citizens and therefore be upheld in its entirety. *See id*. at 74; *see generally United States v. Osorto,* 995 F.3d 801, 811 (11th Cir. 2021) (noting that "state laws that discriminate against noncitizens are subject to strict scrutiny").

B. <u>The political function exception is clearly inapplicable here</u>

As the Supreme Court has explained, "[t]he focus of" its political function jurisprudence "has been whether a position was such that the officeholder would necessarily *exercise broad discretionary power* over the

formulation or execution of public policies importantly affecting the citizen population." *Bernal v. Fainter*, 467 U.S. 216, 223-224 (1984) (emphasis added); *see* Hispanic Fed. Appellees' Br., Doc. 57 at 39-44. That description is accurate: the Court's other decisions concerning the exception ask whether people employing the positions in question are vested with discretionary powers. *See Ambach v. Norwick*, 441 U.S. 68, 75 (1979) (assessing "the degree of responsibility and discretion teachers possess"); *Foley v. Connelie*, 435 U.S. 291, 297 (1978) (noting that police officers "are clothed with authority to exercise an almost infinite variety of discretionary powers").

*Cervantes v. Guerra*, 651 F.2d 974 (5th Cir. 1981), relied upon heavily by appellants, employs the same analysis. There, the Court applied the exception to members of a government-created board because the role "'involve[d] discretionary decisionmaking, or execution of policy, which substantially affects members of the political community.'" *Id*. at 981 (quoting *Foley*, 435 U.S. at 296) (noting that the board in question "dispose[d] of a budget of between five and ten million dollars in public funds").

15

Appellants attempt to expand the exception to encompass 3PVRO volunteers, describing them as "cogs in the wheel of the election administration process." Appellants' Br., Doc. 21 at 31. But that admission of their role ends the inquiry: cogs in a wheel plainly *do not* exercise discretionary power. Nor do 3PVRO volunteers — they perform "clerical and ministerial" duties, following strict and detailed rules when collecting voter registration applications and submitting them to the State. 467 U.S. at 225. If they fail to follow those rules, they risk severe punishment. Unlike in *Cervantes*, 3PVRO volunteers do not make "choices [that] have profound effects on the community." 651 F.2d at 982. Appellants' effort to apply the exception to any person, government employee or not, who plays any role related to the democratic process finds no support in the case law.

Nor can appellants show that the political function exception should be applied "every step along the way of helping citizens elect citizen peers." Appellants' Br., Doc. 21 at 31. The *Cervantes* Court's discussion provides no support for that proposition because it focuses on elected officials and "the right of the people to be governed by their citizen

peers," 651 F.2d at 981 (quotation marks omitted), which is plainly inapplicable to volunteers far removed from elected office.

Likewise, *Bluman v. FEC*, 800 F. Supp. 2d 281 (D.D.C. 2011) (*see* Appellants' Br., Doc. 21 at 31), is unhelpful. Although *Bluman* contains broad dicta about limiting "the right to participate in . . . activities of democratic self-government" to citizens, its holding concerned political spending by foreign nationals who sought to "influence how voters [would] cast their ballots." *Id*. at 288. Here, of course, the activity at issue is not seeking to influence voters, but simply "collecting or handling" completed voter registration applications.[5] Further, even appellants likely would concede that *Bluman*'s holding is limited to political spending and cannot be applied to speech itself: Florida has not tried to prevent non-citizens from merely speaking or writing in support of a candidate for office, and could not constitutionally do so. *See, e.g., Bridges v. Wixon*, 326 U.S. 135, 148 (1945) ("Freedom of speech and of press is

---

[5] To be sure, as the League and appellees have argued, the law's limitation on collecting and handling voter registration applications heavily burdens 3PVRO volunteers' ability to engage in speech that addresses issues of democratic self-government. But appellants have not directly regulated that speech and maintain that volunteers may continue to engage in that speech despite the Non-U.S. Citizen Volunteer Restriction.

accorded aliens residing in this country.").[6] But by sweeping in any activity related to self-government, appellants' version of the political function exception would allow Florida to do just that.

More fundamentally, appellants do not even try to link the political function exception's rationale to the rationale behind the Non-U.S. Citizen Volunteer Restriction. The political function exception's purpose is to allow states to "limit the *right to govern* to those who are full-fledged members of the political community." *Bernal*, 467 U.S. at 221 (emphasis added). But appellants do not contend that the restriction at issue here is about self-government; instead, they argue that it helps ensure that voter registration applications are timely submitted, on the theory that "those with illegal or temporary status . . . may leave the country voluntarily or involuntarily any day and without warning." Appellants' Br., Doc. 21 at 25. That alleged concern over sudden flight or deportation is fundamentally distinct from one about whether non-citizens who

---

[6] While the political spending at issue in *Bluman* receives robust First Amendment protection, the Supreme Court has never treated campaign spending identically to verbal or written speech. For example, campaign contributions to a particular candidate may be limited in amount, *see*, *e.g.*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 345 (2010), while verbal or written speech in support of that candidate clearly may not.

remain in the United States and submit completed voter registration forms possess "the right to govern," *Bernal*, 467 U.S. at 221, meaning that the political function exception is inapplicable here.

## II. The District Court Correctly Determined that the Voter Information Restriction Is Likely Unconstitutionally Vague

The district court properly enjoined SB 7050's Voter Information Restriction as void for vagueness.

SB 7050 prohibits a person collecting voter registration applications on behalf of a 3PVRO from copying the voter's application or "retain[ing] a voter's personal information, such as the voter's Florida driver license number, Florida identification card number, social security number, or signature, for any reason other than to provide such application or information to the [3PVRO] in compliance" with Section 97.0575. Fla. Stat. § 97.0575(7). Violation of this provision is a third-degree felony. *Id.*

A.  <u>The district court applied the proper standard for vagueness</u>

In issuing the preliminary injunction, the district court articulated a three-part test, supported by well-established legal authority, to

evaluate the Voter Information Restriction. *See* PI Order, *NAACP*, Doc. 101 at 40.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A law is void for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).

"The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982). For example, courts have lower tolerance for vagueness in criminal statutes, as compared to civil statutes. *Id.* at 498-99. Vagueness is *least* tolerated in statutes that "threaten[] to inhibit the exercise of constitutionally protected rights," where "a more stringent vagueness test should apply." *Id.* at 499.

As the district court correctly reasoned, *see* PI Order, *NAACP*, Doc. 101 at 38-39, whereas "federal courts have the power to adopt narrowing

constructions of *federal* legislation," *Boos v. Barry*, 485 U.S. 312, 330-31 (1988) (emphasis added), "federal courts are without power to adopt a narrowing construction of a *state* statute unless such a construction is *reasonable* and *readily apparent*," *id.* at 330 (emphases added). Thus, as the district court did here, courts must look to the plain language of the challenged statute to determine if such a constitutional reading of the statute exists. *See* PI Order, *NAACP*, Doc. 101 at 39-40 (citing *Citizens for Responsible Gov. State Pol. Action Comm. v. Davidson*, 236 F.3d 1174, 1194-95 (10th Cir. 2000)).

A state statute that provides for criminal penalties is unconstitutionally vague unless it "define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited" "in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

To avoid invalidation under the vagueness doctrine, a law must adequately define to whom the statute applies. *See Dream Defs. v. Governor of the State of Fla.*, 57 F.4th 879, 891-93 (11th Cir. 2023) (concluding that state statute was void for vagueness because, *inter alia*,

multiple valid interpretations existed as to "which participants [in a protest] could be arrested and charged with rioting in [a] hypothetical scenario"); *see also Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 275 (4th Cir. 2019) (holding that state statute was void for vagueness where its use of "the term 'drunkard' does not provide any meaningful guidance").

To be valid under the void-for-vagueness doctrine, a law must also adequately define the conduct that it prohibits. *See Dream Defs.*, 57 F.4th at 891-93 (concluding that state statute was void for vagueness because, *inter alia*, its "text raises [] questions about what kind of conduct the statutory definition prohibits").

B. The district court correctly held that the Voter Information Restriction is unconstitutionally vague

Applying these standards for vagueness to the Voter Information Restriction, the district court properly reasoned that "[t]o understand what this section prohibits a person of ordinary intelligence must know three things: (1) to whom does the statute apply; (2) which information falls within its reach; and (3) what is the person prohibited from doing with that information." PI Order, *NAACP*, Doc. 101 at 40. The court correctly concluded that the law fails on all three fronts.

22

First, the district court correctly determined that "the statute offers no readily apparent construction as to whom it applies." PI Order, *NAACP*, Doc. 101 at 43. While the court acknowledged that it was "obvious" that the Voter Information Restriction applies to "individuals who engage directly with voters and collect completed applications from the voters," it was also right to conclude that the Restriction "does not necessarily limit its prohibitions only to [such] people." *Id* at 42-3. The law could, for example, "include[] the chain of command and the chain of custody within a given 3PVRO, from the canvasser to the field organizer, to the quality control personnel, to the person who finally delivers the completed applications to the appropriate elections officials." *Id* at 43.

In their opening brief, appellants contend that because the Voter Information Restriction uses the word "collecting," the law applies to individuals who directly "gather[] an application from a prospective voter" and not to individuals who "take[] the steps necessary to deliver the completed application to the appropriate election official." Appellants' Br., Doc. 21 at 34 (arguing that the Restriction applies to an individual "when she's collecting applications, though not when she's handling

applications collected by others").[7] Thus, under appellants' reading of the statute, the Restriction only applies to volunteers who receive completed voter registration applications directly from registrants at, for example, a voter registration drive. But the Restriction could just as plausibly be read to apply to supervisors who "collect" completed applications from the group of volunteers they are supervising, and appellants provide no reason to reject such an understanding. Moreover, appellants' reading of the statute nonsensically would prohibit a volunteer who receives a completed application from a registrant from retaining personal information on that application, but would *allow* that volunteer to pass that completed application onto another volunteer, who would in turn be permitted to retain the personal information at issue.

A restriction on speech such as the Voter Information Restriction, which "only vaguely specifie[s] who it cover[s]" and forces individuals to

---

[7] Notably, although appellants highlight the Voter Information Restriction's use of the term "collecting" instead of "collecting or handling," which is found elsewhere in SB 7050, the Department of State's newly published rule does not define the term "collecting" standing alone. It defines "collecting or handling" as "physically exercising custody over voter registration applications containing a voter's personal information" without distinguishing between "collecting" and "handling." *See* Fla. Admin. Code 1S-2.042(3)(c).

guess if they are in fact covered, is unconstitutional. *In re Murphy-Brown, LLC*, 907 F.3d 788, 800-01 (4th Cir. 2018) (vacating a gag order that covered a "pool of potential witnesses [that] was unimaginably large and anything but self-explanatory" and could "include[] nearly everyone related to the controversy").

Second, the district court correctly held that the Voter Information Restriction impermissibly "leaves open a broad universe" of what information falls within its reach — that is, what the Restriction contemplates as "personal information." PI Order, *NAACP*, Doc. 101 at 47.

The Restriction describes "personal information" as including, but not limited to, a voter's driver's license number, identification card number, social security number, or signature. As the district court reasoned, no readily apparent construction of the Restriction's plain language supports appellants' argument that "personal information" means "private, non-public information."[8] Indeed, SB 7050 does not

_____

[8] Moreover, even assuming *arguendo* that the Restriction does in fact define "personal information" as "private, non-public information," the terms "private" and "non-public" are subject to "sweeping and shifting" definitions that still do not adequately define what information is

define the term "personal information" at all and merely provides a non-exhaustive list of examples.

By contrast, this Court held that the Driver's Privacy Protection Act (DPPA) was *not* void for vagueness where it adequately defined the term "personal information." *United States v. Hastie*, 854 F.3d 1298, 1303, 1305 (11th Cir. 2017) (noting that the law "defines the term 'personal information' as 'information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5–digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status'" (quoting 18 U.S.C. § 2725(3)). This Court reasoned that "[t]he term 'personal information' should be read naturally to include facts that can identify an individual." *Id.* at 1304 (concluding that email addresses counted as "personal information").

---

covered. PI Order, *NAACP*, Doc. 101 at 47 ("Defendants' proposed construction begs the question of whether something is private or 'not generally available to the public' depends upon the efforts to which someone must go to locate the information.").

SB 7050, unlike the DPPA, does not define "personal information" at all. And tellingly, appellants' own definition of the term contradicts the Eleventh Circuit's "natural reading" of "personal information" in *Hastie*, by defining the term to *exclude* email addresses. *See* Appellants' Br., Doc. 21 at 35. This contradiction underscores the inevitable conclusion that there is no readily apparent construction of the Restriction that can apprise a person of ordinary intelligence as to which information falls within its reach.

Nor can appellants succeed by employing a cross-reference to information that is "confidential and exempt" from Florida's public records laws. *See* Appellants' Br., Doc. 21 at 36. Nowhere in the Voter Information Restriction are those public records laws mentioned, and appellants provide no reason to believe that a person reading SB 7050 would look to public records laws for guidance. *See, e.g.*, *GeorgiaCarry.org, Inc. v. City of Atlanta*, 602 F. Supp. 2d 1281, 1284 (N.D. Ga. 2008) ("The Court, however, cannot use definitions from a[n] entirely different statute to construe a term . . . in a manner that is contrary to the term's common and ordinary meaning."), *aff'd*, 318 F. App'x 851 (11th Cir. 2009); *Watkins v. Brown*, 173 F. Supp. 2d 409, 414

(D. Md. 2001) (noting as significant that "[t]here is no indication in the statute that these definitions are any different from the commonly understood meaning of the term").

Further, it is worth noting that even appellants are inconsistent in their definition of the term "personal information." In one instance in their preliminary injunction briefing, appellants use the term "personal voter information" to *include* an individual's home address, Def. Resp. Br., *League of Women Voters*, Doc. 38 at 28, but in another instance, appellants explicitly *exclude* home addresses from the term, *id.* at 33. This inconsistency demonstrates that appellants' reading of the Restriction is not "readily apparent" from the language of the statute but was conjured only in response to this litigation.

Third, the district court likewise observed that the Voter Information Restriction is unclear as to what a person working for a 3PVRO is prohibited from doing with voter information received. *See* PI Order, *NAACP*, Doc. 101 at 45-46. While that person must "provide such application or information to the [3PVRO] *in compliance with*" SB 7050, that definition "only leads to further ambiguity as it fails to address what individuals working for the 3PVRO may do with the voter registration

applications or voter information once they receive it from those individuals who collected it directly from voters." PI Order, *NAACP*, Doc. 101 at 45-46. Namely, it remains unclear whether those "individuals working for the 3PVRO" may retain a voter's information so that the 3PVRO may later contact the registrant to remind them to vote or ask them to volunteer. While appellants have suggested that the 3PVRO may not retain the information at all after a registrant's application is delivered to the State, and have finalized a rule codifying that interpretation, Fla. Admin. Code 1S-2.042(5)(g), "this prohibition is found nowhere" in the statute. PI Order, *NAACP*, Doc. 101 at 46.[9]

## CONCLUSION

For these reasons, the district court's order should be affirmed.

---

[9] Further, appellants' interpretation that would include a prohibition on 3PVROs themselves contradicts their position that the Voter Information Restriction applies only to individuals collecting applications directly from prospective voters. *See* Appellants' Br., Doc. 21 at 33-34.

Respectfully Submitted,

*/s/Brent Ferguson*

Chad W. Dunn
Florida Bar No. 0119137
BRAZIL & DUNN
1200 Brickell Avenue
Suite 1950
Miami, FL 33131
Telephone: (305) 783-2190
Facsimile: (305) 783-2268
chad@brazilanddunn.com

Danielle M. Lang (D.C. Bar No. 1500218)
Brent Ferguson (D.C. Bar No. 1782289)
Jonathan Diaz (D.C. Bar No. 1613558)
Christopher Lapinig (CA Bar No. 322141)
Ellen Boettcher (D.C. Bar No. 90005525)
Simone Leeper (D.C. Bar No. 1737977)
Michael Ortega (IL Bar No. 6339469)*
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Ste. 400
Washington, DC 20005
(202) 736-2200
dlang@campaignlegal.org
bferguson@campaignlegal.org
jdiaz@campaignlegal.org
clapinig@campaignlegal.org
eboettcher@campaignlegal.org
sleeper@campaignlegal.org
mortega@campaignlegal.org

*Counsel for Amicus Curiae League of Women Voters of Florida*

**Pro hac vice* application forthcoming

30

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 29(a)(5) because it contains 5,698 words as counted by the word-processing system used to prepare it.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.


Dated: November 20, 2023

*/s/ Brent Ferguson*
*Counsel for Amicus Curiae League of*
*Women Voters of Florida*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on November 20, 2023. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: November 20, 2023

*/s/ Brent Ferguson*
*Counsel for Amicus Curiae League of Women Voters of Florida*